UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NORMAND BEDFORD
(Plaintiff)

v. C.A.No.05-111S

A.T. WALL, Director of the R.I. Dept. of Corrections, et al., (Defendants')



**PLAINTIFF'S REBUTTAL AND RESPONSE TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Now comes Plaintiff, NORMAND BEDFORD, in the above entitled matter and hereby submits his "Rebuttal and Response to Defendant's Motion to Dismiss Complaint in the above cited case number whereby, it is prayed that the Defendant's motion be denied, and the Plaintiff be granted 'Summary Judgement,'" pursuant to Rule 56 Fed.R.Civ.P.

Plaintiff submits the attached "Memorandum in Support of this Rebuttal and Response with attached **exhibits**," **A thru J**, Supplemental exhibit "K".

Respectfully submitted

Normand Bedford
Normand Bedford (Pro se)
P.O. Box 8273
Cranston, RI 02920

**Certification**

I, the undersigned hereby certify, that I, caused a true copy of the within "Rebuttal and Response to Defendant's Motion to Dismiss Complaint" to be mailed this 13 day of APRIL, 2006, via interdepartmental mail, to: Ms. Kathleen M. Kelly, R.I. Dept. of Corrections Legal Counsel, 40 Howard Avenue, Cranston, RI 02920.

Normand Bedford

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NORMAND BEDFORD
(Plaintiff)

v. C.A.No.05-111S

A.T. WALL, Director of the R.I.
Dept. of Corrections, et al.,
(Defendant's)



**PLAINTIFF'S MEMORANDUM IN SUPPORT OF REBUTTAL AND RESPONSE TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Now comes Plaintiff, NORMAND BEDFORD, in the above-entitled matter and hereby submits the instant "Memorandum in Support of Rebuttal and Response to Defendant's Motion to Dismiss Complaint."

**Facts and Travel:**

1. Plaintiff, NORMAND BEDFORD, an inmate currently housed at the Adult Correctional Institution, located in Cranston, Rhode Island filed suit in United States Federal District Court in March of 2005, alleging that the Rhode Island Department of Corrections, and it's agents (Senior Accountants'), and employees has stolen and misappropriated Plaintiff's personal funds from his inmate bank account in violation of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 [12 U.S.C.A. §1883a], and §951; as well as Rhode Island General Laws §§ 11-41-11; §11-41-11.1; and §11-41-12; and further alleged that R.I.D.O.C. Policy 13.03 was also violated. **See** enclosed herein, as **Exhibit "A"**, (D.O.C. Policy 13.03 page 5 of 8 subsection (d), **Indigent Inmates**.) Plaintiff further alleges that

the theft of his personal money from his inmate account was done repeatedly over a three (3), year period, was deliberate and part of a broad conspiracy to obstruct administration of justice in violation of **18 U.S.C.S. §§1503; §1702; and §1512**, which specifically, relates to obstruction of correspondence, and the victim witness protection act within the meaning and language of **§1503.**

**2.** The Defendant's at page two (2), in describing the Standard of Review under a 12(b)(6) Motion to Dismiss **Id. at** I. state in part, that "A motion to dismiss under Rule 12(b)(6) will only be granted when it appears beyond doubt that the plaintiff can prove no set of facts, which would entitle him to relief," citing **Conley v. Gibson, 355 U.S. 41, 45-46; 2 L.Ed.2d 80; 78 S.Ct.99 (1957).** They further assert that "although the threshold for stating a claim is low, it is not nonexistent." "It is the Plaintiff's burden to take the step which brings his case safely into the next phase of the litigation," **Gooley v. Mobil Oil Corp, 851 F.2d 513, 514 (1st Cir. 1998).** No credit need be given to gauzy generalities, unsupported conclusions, subjective characterizations, and problematic suppositions. **Merritt v.Aylmer, etc., 1992 U.S. App. Lexis 28857, citing The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).** "It is not enough to allege a general scenario which could be dominated by unpleaded facts, nor merely to allege without specification that defendants used their powers generally with respect to various governmental bodies to plaintiff's prejudice." **Merritt v. Aylmer, etc, 1992 U.S. App. Lexix 28857; citing Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir.1982).**

**3.** The Defendants' misleading assertions described in their **November 2, 2005** "Motion to Dismiss Complaint" Id. at p.3, states, that "Plaintiff's factual assertions are nothing more than unsupported conclusions, suppositions, and generalitites." And, "In each allegation outlined by the Plaintiff, he merely states "the remaining balance of [sum of money] of personal funds were stolen and misappropriated by agents and/or accountants of the Department of Corrections Inmate Account Office." They further go on to assert, that "The only factual assertion the Plaintiff appears to set forth is that the removal of the funds is in violation of DOC Policy #13. 03, page 5 of 8. (Plaintiff's Exhibit A in the Complaint). However, plaintiff fails to state how this policy supports his claim, how the funds were removed in contravention of the policy, and what the purported purpose was for the removal of the sums. He also fails to disclose any outstanding negative balances he was carrying, how such a negative balance effected the removal of funds, and, with the exception of commissary purchases, what ongoing expenses he incurred relevant to the funds." Finally, the Defendants' erroneously conclude, that "Plaintiff's complaint set forth nothing more than bare conclusions and lack sufficient facts to evaluate his claims."

**4.** First, in rebuttal to the aforementioned misnomers Plaintiff avers that his complaint was filed repeatedly with this Court on **October 4, 2004**, received and time stamped on **September 6, 2005**, and again received and time stamped on **October 20, 2005**, as shown in Plaintiff's "Objection and Rebuttal Memorandum in it's **exhibits**

certified and mailed to this Court on **November 1, 2005**, as it relatates to this Court' **erroneous** contention that "The complaint that was filed with the Court on **March 11, 2005** contained **exhibits A-C.** The copies received today that you are serving upon the defendants contain two additional **exhibits, D and E.** Because these additional **exhibits** are not part of the Court record I have printed the copy of the complaint you filed on **March 11, 2005**, and attached said complaint to your Form USM-285." **See** enclosed as **Exhibit "B"**, herein, (U.S. Federal District Court Case Management Supervisor's **October 20, 2005** correspondence signed by Ms. Paula Farrell Pletcher.) Nevertheless, what Ms. Paula Farrell Pletcher **failed** to recognize is that in Plaintiff's complaint received by this Court on at least three (3), seperate occasions specifically notes on the cover-page, that **exhibits A-E** were enclosed. Notwithstanding, page 2 of 5 of Plaintiff's notorized Affidavit and Claim of Lien, dated **3-4-2005**. clearly states in pertinent part, that "Affiant submits the enclosed Affidavit of Complaint filed with this Honorable U.S. Federal District Court on **November 18, 2004**, as **Exhibit "A"**, in support of the instant Complaint and associated Affidavit and Claim of Lien." Therefore, the evidence in the form of **exhibits D and E**, were unequivically, filed with the complaint despite what Ms. Farrell Pletcher **erroneously** claimed in her **October 20, 2005** letter. Plaintiff filed a timely "Objection and Rebuttal to the above noted **October 20, 2005** letter with this Court on **November 1, 2005**. **See** enclosed as **Exhibit "C"**, with it's attached **exhibits** of the repeated filings of the same complaint. It seems a little conspicuous that the very substance and supporting evidence in the form of "accounting data, an **August 24, 2004** letter to the acting Director of Corrections,

Mr. Ashbel T. Wall II, as well as numerous certified mail receipts evincing factual allegations of "mail tampering, deliberate obstruction of legal correspondence, and insufficient money transfer transactions in violation of federal law **18 U.S.C. Sections 1503; and Section 1702**, would apparantly turn up missing." Ms. Paula Farrell-Pletcher's late contention is baseless, and in contradiction to the supporting facts herein, as it relates to crucial evidence of "conspiracy to obstruct justice, obstruction of legal correspondence, and repeated theft of personal funds from Plaintiff's inmate account" in violation of **18 U.S.C. Sections 1503; Section 1702**, defined as obstruction of correspondence, and prying into the business and legal secrets of another, as well as in violation of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 **[12 U.S.C. §1883a]; and §951.** There can be no mistake in the advertent theft and misappropriation of Plaintiff's personal funds when there were eleven (11), seperate accounts of the purported theft, nor can there be any mistake as to the key orchestrator of these serious crimes, namely, Captain Vitale, of the Medium Security facility-1, Adult Correctional Institution (ACI), as described in the **August 24, 2004** correspondence to Department of Corrections Director Asbel T. Wall II, with it's attached Grievance material, money transfer receipts signed by Captain Vitale, and the certified receipts exemplifying the dates of mailing in contrast to the unlawful withholding of legal correspondence, one being held for twelve (12), days before being returned to Plaintiff, by Captain Vitale. Notably, within the **August 24, 2004** package there exists a **September 3, 2004** "response letter by Rhode Island Department of Corrections Director Ashbel T. Wall II, whereby, supports Plaint-

iff's retaliation claims, because it was on **September 3, 2004, See Exhibit "D"**, (2-Store order receipts & 2-Money deposit slips), that a fifty dollar ($50.00), deposit was made to Plaintiff's inmate account, when shortly thereafter an agent and/or accountant did, in fact, steal and misappropriate fifteen dollars and seventy-four cents ($15.26), leaving the Plaintiff with nine dollars and seventy-four cents ($9.74), which was spent on his commissary store order, despite his ordering a sum of twenty-five dollars ($25.00), worth of products on **September 7, 2004.** Notably, the money was stolen the same day it was deposited. **Id. at p.4, of Complainant's Affidavit, or as this Court's Document 1, p.14 of 27.** It is in **Exhibit "D", (Plaintiff's two page letter to R.I. Dept. of Corrections Dir. A.T. Wall, with it's exhibits** of three letters addressed to Chief Grievance Coordinator Mr. Robert McCutcheon, with attached Grievance material and money transfer receipts, that demonstrate deliberate "mishandling and withholding of legal mail," before Captain Vitale, utilized his executive powers to unlawfully "influence agents and/or accountants to steal Plaintiff's money." These allegations and facts are described in Plaintiff's Complaint and Affidavit at **Court Document 1, p.14 of 27**, noting Captain Vitale's unlawful actions. **See averments 8 & 9**, within Plaintiff's **October 4, 2004 Affidavit at page 4**, again, describing Captain Vitale's "leading roles" in withholding Plaintiff's legal pleadings for extended periods of time in violation of **D.O.C. mail policy 24.01-4**, as well as **Federal law, 18 U.S.C. §§1503**; and §1702.

5. Additionally, Senior U.S. Magistrate Judge Jacob Hagopian's **August 23, 2005, Report and Recommendation** exemplifies how the Plaintiff continues to suffer at the hands of the Defendants with a determined purpose in a "corrupt endeavor" to obstruct admin. of justice,

impede his access to the Courts in attempt to "overturn his nineteen ninety-eight (1998), Wrongful, Illegal and Void Judgement of Conviction and Sentence, as well as punish the Plaintiff for his repeatedly exposing and unveiling widespread corruption within, and outside the Rhode Island Department of Corrections (ACI)." See United States Magistrate Judge (Senior), Hagopian's **August 23, 2005, Report and Recommendation at page 1, paragraph two,** wherein, it states in pertinent part, that "In response to the Order to Show Cause, **plaintiff indicates that he attempted to serve the defendants through interdepartmental mail.** See Plaintiff's Memorandum to Show cause, at 1-2, **(not included herein.)** However, **he was unsuccessful. Id. Plaintiff also indicates that he was confined in segregation for almost two (2), months of the 120 day period (May 2, 2005 through June 27, 2005).** See Plaintiff's Supplemental Memorandum in Support of Motion to Show Cause, at **2, (not included herein.)** During this time, **access to his legal files was allegedly curtailed. Id.** Accordingly, plaintiff seeks an extension of time in which to complete service. **See Exhibit "E"**, herein, (Senior U.S. Magistrate Judge Jacob Hagopian's **August 23, 2005, Report and Recommendation.)**

**5a.** In further support of Plaintiff's claims noted above, involving the "punishment of critics, retaliation and repeated harrassment as part of a bigger picture of obstruction of justice," Plaintiff avers, that **he has spent the same amount of time in segreation** at the Maximum Security facility in Cranston, R.I., over the past year, just as he had, in sharp contrast, over a four and one half (**4½**),

year period, from **July of 2000** through **February of 2004,** at the Medium Security facility prison in Cranston Rhode Island. This [2] acute and sudden escalation in the amount of time Plaintiff has spent in segregation is a direct result of Plaintiff's litigation over the last five (5), years filed in this Court in several habeas corpus petitions for relief from his unlawful conviction and sentence, which, notably the Rhode Island Department of Corrections has been unlawfully thwarting over the course of several years, as Plaintiff has presented volumes of evidence to prove that unlawful conviction and sentence in D.C.Nos.**04-271L; 05-095L; and 04-527L,** which relates specifically, to the Defendants repeated roles in the obstruction of justice, supported by a host of notorized Affidavits of Complaint, none of which were ever rebutted by the Defendants.

**6.** Moreover, the Defendants state in their "Motion to Dismiss Complaint" at page four, that "the statute defining the Financial Institutions Reform, Recovery and Enforcement Act of 1989, **12 U.S. C.S. §1883(a),** has no applicability to Plaintiff's claims of misappropriation." They further state that,"**12 U.S.C.S. §1883,** relates to insurance rates and insurance protection for financial institutions against losses resulting from robberies, burglaries and larcenies committed by individuals upon those institutions."

**7.** Plaintiff clearly states a claim for which relief can be granted under **12 U.S.C.S. §1883(a),** because, though the above criteria relating to the statutory authority in **12 U.S.C.S.§1883(a),** has various terminology, such as "insurance protection for financial

[2] **See Supp. Exh. "K", as Prison travel sheet.**

institutions against losses from 'robberies, burglaries and larcenies' committed by individuals upon those institutions," Plaintiff's claims which directly result from obstruction of justice, as well as obstruction of legal correspondence, in a "corrupt endeavor" to impede his access to the Courts, in violation of **18 U.S.C.S.§§1503; and §1702; as well as §1512,** which lead to the deliberate and intentional **larceny** and **misappropreation** of his personal monies from his inmate account, surely, meet the definition in the statutory authority noted above. Thus, relief should be granted on this premise alone.

**8.** The Defendants assert in their **November 2, 2005** "Motion to Dismiss Complaint" at page 4, that "Plaintiff claims the removal of the funds is in violation of the federal Obstruction of Justice statute **18 U.S.C. Section 1503.**" They also contend that "this statute also has no applicability to Plaintiff's claims of misappropriation. **18 U.S.C. Section 1503** provides:

> **Section 1503. Influencing or injuring officer or juror generally**
> (a) Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or

other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, **shall be punished as provided in subsection (b).**

**9.** Defendants point out in their "Motion to Dismiss Complaint" at **page 5,** that "this statute relates to the federal offense of Obstruction of Justice. The purpose of the statute is to protect not only procedures of [the] criminal system but also its goal is to achieve justice. **United States v. Griffin, 444 U.S. 825, 62 L. Ed. 2d 32, 100 S.Ct.48."** The statute "renders illegal all interference with judicial functions of the United States, and the final clause of the statute was added....to cover those means of interference which the draftsmen were not prescient enough to enumerate." **United States v. Bonanno, 285 F.2d 408 (N.Y.1960). 18 U.S.C.S. Section 1503** is a criminal statute that does not provide for private causes of action," citing, **Forsyth v. Humana, Inc., 114 F.3d 1467, 1482 (Cir.9th 1997).** Plaintiff's allegations in no way relate to tampering, interfering or obstructing witnesses, jurors, or the judicial functions of the courts of the United States. Under any interpretation of the facts set forth by the Plaintiff, he fails to state a claim for which relief can be granted under **18 U.S.C. Section 1503."**

**10.** Plantiff strongly refutes the Defendants "bold assertions" that the statute **18 U.S.C. Sections 1503; and §1702,** defining Obstruction of justice "has no applicability to Plaintiff's claim of misappropriation." First, the language and applicability of **18 U.S.C. §1503; and §1702,** is broad and covers a wide range of offences, insofar as Plaintiff's litigation and causes of action in the United States Federal District Court, as well as his litigation in the United States Court of Appeals for the First Circuit over the course of five (5), years have been unduly effected, by and through the interference and unlawful actions of the Defendants. The motive in doing so, is that "Plaintiff has sought diligently over the past eight (8), years, to over-turn his "Wrongful, Illegal and Void Judgement of Conviction and Sentence of nineteen ninety-eight (1998), whereby, he has uncovered a host of illegalitites, specifically, "concealment of evidence, malicious prosecution, and abuse of process" in violation of **18 U.S.C. §§1983; and §7:56;** as well as **18 U.S.C. §§1503; and §1702,** defining Obstruction of justice. The Defendants concede in their "Motion to Dismiss Complaint" at **page 5,** that "The statute "renders illegal all interference with judicial functions of the United States, and the final clause of the statute was added....to cover those means of interference which the draftsmen were not prescient to enumerate, citing **United States v. Bonanno, 285 F.2d 408 (N.Y.1960).** They further state that "Plaintiff's allegations in no way relate to tampering, interfering or obstructing witnesses, jurors, or the judicial functions of the Courts of the United States." **Id. at page 5.** Plaintiff again, strongly refutes the misleading contentions of the Defendants. In support of this,

Plaintiff submits his **October 18, 2004, "Affidavit of Complaint"**[1] filed with this Court and time stamped **November 18, 2004**, demonstrating the Defendants violations of **18 U.S.C. §§1503; §1702; and §1512**, wherein, a potential key witness named Thomas Edwards, was the victim of the ongoing conspiracy to obstruct justice, when the Defendants retaliated against him for being a potential witness to federal crimes committed by the Defendants in a United States Federal District Court habeas corpus petition, filed by Plaintiff. Notably, the connection with inmate and key witness Thomas Edwards, is described in the **enclosed <u>Exhibit "D"</u>**, herein, where the certified mail receipts bear Mr. Edwards name. This was discovered by the Defendants in the **August 24, 2004, two page letter**, as **<u>Exhibit "D"</u>, addressed to Rhode Island Department of Corrections Director Ashbel T. Wall II, demonstrating on page two therein, the "Concealment of evidence, obstruction of justice claims involving the Defendants."** Specifically, the "twice filed" "Motion to Enlarge Time to file brief on appeal," sent to Rhode Island Supreme Court Chief Justice Frank Williams, via "Certified mail, restricted delivery, express mail," whereby, the receipts in **<u>Exhibit "D"</u>**, herein, verify. More importantly, this same **exhibits package** holds the substance of evidence supporting Plaintiff's claims. This same **exhibits package** is also, "the same evidence that Ms. Paula Farrell-Pletcher, United States Federal District Court Case Management Supervisor, **mysteriously**, but **unsuccessfully** attempts to elude, as demonstrated in her **October 20, 2005** letter to Plaintiff, which can be referenced herein, in the Plaintiff's **November 1, 2005, "Objection and Rebuttal Memorandum," as <u>Exhibit "C"</u>**, whereby, she attempts

[1] **<u>See</u> Exhibit "G" herein.**

with futility to reject crucial evidence that this Court knowingly received on at least four (4), seperate occasions, and specifically received prior to the Defendants being formally and officially served with the Complaint, by the U.S. Marshall's Service. This further serves to prove the "interference of normal judicial functions in the U.S. Federal District Court, by the infiltration of the Defendants in violation of **18 U.S.C. §§1503**; and **1702**, as alleged herein.

**11.** The Defendants now attempt to confine the Plaintiff's claims of "Obstrtuction of justice," as well as violating the "Financial Institutions, Reform, Recovery and Enforcement Act," into a simple, but "meritless claim" of violating R.I.D.O.C. Policy 13.03 (D.O.C.). Plaintiff's facts and submissions herein, support his claims otherwise. Defendants have done more than violate R.I.D.O.C. Policy. They have "diminished the integral aspect of the Criminal Justice system," and have further violated the "publics' trust." Moreover, the Defendants, acting with deliberate indifference and malice have caused the Plaintiff "financial hardship," insomuch as he was subsequently in genuine fear of utilizing his inmate account to fund the prosecution and defense of his appellate process, as it relates to his "wrongful, illegal and void judgement of nineteen ninety-eight conviction and sentence," obtained in contravention of the United States Constitutions First, Fifth, Sixth, Eighth, and Fourteenth Amendments, pursuant to the doctrine of **Johnson v. Zerbst**, **304 U.S. 458 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)**; and also, **U.S. v Mateo**, **950 F.2d 44 (1st Cir.1991)**; and also, Federal Law, **Title 18 of the United States Code §201(C)(2)**; and **42 U.S.C. §§1983**; and **§7:56**, defined as [malicious prosecut-

ion, and abuse of process], as well as the doctrinal authority of the "Federal Bribery Statute" **18 U.S.C. §201(C)(2)**, as noted above.

**12.** Incidently, it is the **unveiling** of the aforementioned Federal crimes, and the attempted cover-up of the same, that has cultivated such an egregious "miscarriage of justice." **See United States v. Griffin**, **444 U.S. 825, 62 L.Ed.2d 32, 100 S.Ct.48. See** also, **United States v. Bonanno, 285 F.2d 408 (N.Y.1960).**

**13.** In support of Plaintiff's factual theory, he submits herein, as **Exhibit "F"**, his **August 23, 2005**, **two page** letter addressed to United States Federal District Court Senior Judge Ronald R. Lagueux, with it's **enclosed August 9, 2005, Affidavit in Support of the encl-osed August 4, 2005, "Clarification letter with exhibits to State's August 3, 2005 Objection to Petition for Writ of Mandamus," with it's attached exhibits 1-7, demonstrating "Concealment of Evidence, consp-iracy to obstruct due administration of justice, and blatant denial of Plaintiff's due process rights, and equal protection of the law.** Also, enclosed therewith, is Plaintiff's numerous letters to Rhode Island Attorney General's Chief Appellate Attorney Mr. Aaron L. Wei-sman, dated **July 21, 2005; January 3, 2005; August 20, 2005; October 14, 2005, and lastly September 12, 2005. See also, Mr. Weisman's response letters enclosed dated August 3, 2005; November 22, 2005; and December 14, 2005.** The preponderance of that evidence is over-whelmingly, in favor of Plaintiff's claims against the Defendant's, as well as it is in favor of Plaintiff's viable claims that **"he has long ago exhausted any and all available state corrective process,"**

or more importantly, that "there is (either) an absence of available state corrective process*** or (the existence of) circumstances*** that render such process ineffective to protect (his) rights, **28 U.S.C. Section 2254.** **See O' Sullivan v. Boerckel**, **526 U.S. 838, 842, 119 S.Ct. 1728, 1731 (1999).** The above noted material evidence was filed in this Court under **No.05-095L**.

**14.** The Defendants at **page 5,** of their "Motion to Dismiss Complaint" contend that **"18 U.S.C. Section 1503** is a criminal statute that does not provide for private causes of action." Plaintiff avers, that "though the nature of his habeas corpus petition, filed in this Court, pursuant to **28 U.S.C.A. Section 2254,** is a civil action, the substance of that petition derives from an "Unlawful and Void Judgement of Conviction and Sentence in a **'criminal case.'"** Furthermore, the Defendants "unlawful actions" are also **criminal in nature** and violate **Federal criminal statutes.** Thus, they cannot and should not be permitted to contain such serious allegations within the parameters of the Rhode Island Department of Corrections policies, regarding mail procedures, and indigency standardards. In light of this criteria, Plaintiff has stated a claim for which relief can be granted under **18 U.S.C. Sections 1503; 1702; and 1512.**

**15.** The Defendants at **page 6,** of their "Motion to Dismiss Complaint" refute Plaintiff's claims that "The removal of the funds is in violation of Rhode Island General Laws **11-41-11; 11-41-11.1; and 11-41-12.** They state that "These statutes define the criminal charges of **Embezzlement (RIGL 11-41-11), Unlawful appropriation (RIGL 11-41-11.1), and Fraudulent conversion by agent or factor (RIGL 11-41-12)** under the laws of the State of Rhode Island. None of these statutes

relate to federal statutory law. Further, where state law provides a meaningful post-deprivation remedy, the taking or destruction of an inmate property does not violate due process," citing, **Ramirez v. Donald Wyatt Detention Center, et al., 1998 U.S. Dist. Lexis 15434 (R.I.1998).** Defendants proceed to argue, that "Assuming arguendo, that Plaintiff has a valid claim under any of these statutes, his remedy is within the Rhode Island State Court system, not the Federal Courts."

16. Plaintiff would argue in rebuttal to the above, that "though the statute noted above, specifically, referencing **(R.I.G.L. 11-41-11)**, defining the criminal charge of **Embezzlement**, may be overbearing in this case, however, the other two statutes cited, specifically, **(R.I.G.L. 11-41-11.1)**, defining **Unlawful appropriation**, and **(R.I.G.L. 11-41-12)**, defining **Conversion by agent or factor**, certainly, weigh heavily against the Defendants refuted culpability.

17. Additionally, their was no form of post-deprivation remedy available to this Plaintiff, as he did in fact, **exhaust his remedies within the Rhode Island Department of Corrections Grievance Procedure at both Levels 1 & 2.** Notwithstanding, this Plaintiff has repeatedly been prejudiced by the Rhode Island State Court system, and has proven by Affidavits of Truth and Oath, as well as the preponderance of evidence, that the State Court system are "co-conspirators" and, key figures in a broad conspiracy to obstruct the administration of justice as it relates directly to Plaintiff's completely "Illegally imposed nineteen ninety-eight judgement of conviction

and sentence." See **enclosed as Exhibit "F"**, in support of Plaintiff's viable claims of the **deliberate** "Concealment of evidence, and obstruction of administration of justice, preceding a host of unlawful acts and unconstitutional practices at the hands of numerous State officials within, and outside the Rhode Island Department of Corrections facilities. Therefore, there was absolutely "no post-deprivation remedy available in any State Court forum, and since Plaintiff's litigation has been exclusively in the United States Federal District Court for the past six years, and interlocatory with claims filed with this Court against the Rhode Island Department of Corrections Medium and Maximum Securities, under **No. 04-527L**, then it should be clearly understood that "this Court has valid jurisdiction in this ongoing "scheme of corruption."

18. Moreover, Plaintiff submits the enclosed **November 19, 2004 "Affidavit of Complaint"** as **Exhibit "H"**, in support of "harrassment, retaliation, intimidation, and obstruction of justice claims, against Rhode Island Department of Corrections officials at every level, also, known as ("Defendants"). Notably, Plaintiff's **October 18, 2004 "Affidavit of Complaint,"** time stamped by this Court on **November 18, 2004**, mentioned herein, on **page 12**, at **keynote 1**, were both filed together as **exhibits** to the Plaintiff's **"Certificate of appealability"** on **November 26, 2004**, under No.**04-271L**, in a "Petition for Writ of Habeas Corpus, pursuant to **28 U.S.C.A. Section 2254.**

19. Plaintiff further submits his "accounting data" as **Exhibit "I"**, herein, from the dates of **1/17/2002 thru 5/24/2002**; and from **12/3/2002 thru 9/17/2004**, evidencing that Plaintiff, with fluctuation

consistently, held "negative balances" whereby, the Defendants readily applied the "Indigency standard policy," as **exhibits B and C, of original complaint demonstrates.** After all, if the Defendants believed that Plaintiff was "not indigent" by D.O.C. Policy standards, Policy 13.03, then they would not have sent his legal mail back to him on several occasions claiming he could not send out certified mail packages, legal or not, while "legally indigent," as shown by the above noted **exhibits B and C.** Furthermore, as inquired by the Defendants at **page 3, of their "Motion to Dismiss Complaint"** the Plaintiff consistently held "negative balances" and therefore, was deemed "indigent by D.O.C. Policy standards," which, again, compelled the Defendants to excercise their executive powers to "impede, delay and stop Plaintiff's access to the Courts, in a "corrupt endeavor" to obstruct the administration of justice." The negative balance also prompted the Defendants to lawfully remove fifty percent (50%), of any new deposits, however, did not provide lawful removal of more than fifty percent (50%), as they did on at least eleven seperate occasions, nor did it provide authority to remove more than the fifty percent (50%), allowed by D.O.C. Policy 13.03, subsection (d)(1), just because the Plaintiff may have accrued additional costs for such things as "medical co-pays, copying charges, or postage costs." It is abuntantly clear from the Plaintiff's accounting data herein, as **Exhibit "I"**, that "Plaintiff's repeated deposits over time would pay for any indebtedness, and they need not deliberately steal and misappropriate Plaintiff's money beyond restrictive standards. This further supports the fact, that "the taking of Plaintiff's

money beyond restrictive standards over the course of three years (3yrs.), was no mistake, but for the purpose of 'obstruction of due administration of justice' by impeding, delaying, and even stopping Plaintiff's causes of action in the United States Federal District Court," thus, in violation of the promulgating authority enunciated in **18 U.S.C. §§1503;** and **§1702;** as well as a violation of the "Financial institutions, Reform, Recovery and Enforcement Act of 1989, [**12 U.S.C. §§1883(a)**, and **§9:51**. Notably, **12 U.S.C. §1883(a)**, provides for the civil penalties for violators in an amount assessed by the Court in a civil action under this section. It also provides for penalties of up to one thousand dollars ($1,0-00.00), for each count of unlawful taking of personal property, or as **12 U.S.C. §1884**, would provide, that **Penalties for violations...**

"A bank or savings and loan association which violates a rule promulgated pursuant to this chapter shall be subject to a civil penalty which shall not exceed one hundred dollars ($100.00), for each day of the violation."

**20.** Plaintiff submits the enclosed Memorandum dated **November 7, 2005**, from acting Warden Mr. James Weeden, of the Maximum Security facility prison in Cranston, Rhode Island, on the subject matter of **Misconduct allegations**, specifically, mail tampering, and theft naming a Corrections officer, Justin Amaral, as a key figure in an ongoing conspiracy by Rhode Island Department of Corrections officials to "obstruct the due administation of justice" in violat-ion of Federal Law, **Title 18 of the United States Code, §1503;** and **§1702**. Attached to the above memo is Plaintiff's **September 9, 2005**

**three page letter of corrective response to acting Warden Weeden's erroneous Memorandum of August 22, 2005, also, enclosed herein, as Exhibit "J", involving the same "mail tampering, and theft allegations, by Rhode Island Department of Corrections officials at every level. (Attachments to Plaintiff's Sept. 9, 05 letter included.)**

**Conclusion:**

Plaintiff asserts that despite the Rhode Island Department of Corrections prerequisite rule, whereby, "an inmate must be without any funds for a period of two months, or have less than ten dollars ($10.00), in his or her account, they still make applicable upon their executive discretion, the policy's taking of only "one half of all deposits" to offset any "negative balances." More importantly, the pattern that Plaintiff demonstrates in his complaint, as well as in this "Rebuttal and Response," **Id. at p. 5 & 6,** herein, where the Defendants deliberately stole and misappropriated his personal property, to wit, (money), with consistancy and escalation during the periods of Plaintiff's filing complaints' against Captain Vitale, and agents or factors of the D.O.C. Financial Institution, with the acting Director of Corrections, Mr. Ashbel T. Wall II, prove beyond a reasonable doubt, that 'the eleven independant counts of theft were no mistake,' but part of an ellaborate design, plan and scheme to 'interfere, impede, and obstruct the Plaintiff's due administration of justice' in a United States Federal Court of Law, in violation of **Title 18 of the United States Code, §§1503;** and **§1702;** as well as **[12 U.S.C. §§1883(a),** and **§9:51.** Since all policies, practices

and administrative procedures are set by and are under the control of the director of the department of corrections, and since he set no policies to safeguard inmates against unconstitutional conduct on the part of his subordinates, he had to be held responsible. **See Ferola v. Moran, 622 F.Supp. 814 (D.R.I.1985). See also, R.I. G.L. 42-56-11 entitled "State Affairs and Government." See also, R.I.G.L. 42-56-10 entitled "Powers of the director."**

Therefore, for all the aforementioned reasons, as well as those submitted in Plaintiff's actual complaint, it is hereby, prayed that the Defendants "Motion to Dismiss Complaint" be dismissed, and that Plaintiff be granted "Summary Judgment" in accordance to law, pursuant to **Rule 56**, of the **Federal Rules of Civil Procedure.**

**Respectfully submitted**

**Dated: February 8, 2005.**

Normand Bedford

**NORMAND BEDFORD (Pro se)**
**P.O. BOX 8273**
**CRANSTON, RI 02920-0273**

## Certification

I, the undersigned hereby, certify, that I, caused a true copy of the within "Rebuttal and Response with it's attached Memorandum in Support, and associated Affidavit in Support of same," to be mailed, this 13 day of APRIL, **2006, via interdepartmental mail,** to: Ms. Kathleen M. Kelly, R.I. Dept. of Corrections, Legal Counsel, 40 Howard Avenue, Cranston, RI 02920; Copy sen to U.S. Fed. Dist. Court via certified mail receipt, No. 7005 1160 0003 3977 4674 return receipt requested.

Normand Bedford